DAVID SEROR - Bar No. 67488
TALIN KESHISHIAN – Bar No. 201830
JESSICA L. BAGDANOV - Bar No. 281020
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email:    dseror@bg.law
          tkeshishian@bg.law
          jbagdanov@bg.law

Attorneys for Rosendo Gonzalez, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CREDITORS SPECIALTY SERVICE, INC.,<br><br>Debtor. | Case No. 2:16-bk-20721-BB<br><br>Chapter 7<br><br>**MOTION FOR ORDER AUTHORIZING FOR GOOD CAUSE A REDUCTION OF PURCHASE PRICE ON PREVIOUSLY APPROVED SALE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF ROSENDO GONZALEZ AND DAVID SEROR IN SUPPORT THEREOF**<br><br>[No Hearing Required Under LBR 9013-1(o)] |

1889079

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

Rosendo Gonzalez, Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Creditors Specialty Service, Inc. ("Debtor"), hereby moves this Court ("Motion") for good cause and pursuant to §105(a) for an order authorizing a fifty percent (50%) reduction of the previously approved $175,000.00 purchase price ("Asset Purchase Price"), for the Debtor's business assets, including all tangible and intangible personal property ("Property")[1], to Fidelity Capital Holdings, Inc., *dba* Fidelity Creditor Service ("Buyer"). In support of the Motion, the Trustee respectfully represents as follows:

<strong><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></strong>

I.   **INTRODUCTION**

The Trustee previously filed a motion for an order approving the sale of the Debtor's Property to the Buyer pursuant to 11 U.S.C. §§ 363(b)(1) and (f), free and clear of liens, interests, claims, and encumbrances ("Sale Motion") [Dkt. 100] which was approved by entry of a Court order entered on March 31, 2017 ("Sale Order") [Dkt. 130]. Among other things, the Sale Order approved the Term Sheet Re Sale of Business ("Agreement"). A true and correct copy of the Agreement was attached to the Sale Motion as Exhibit 1. Pursuant to the Agreement, Buyer was to purchase the Property for a total purchase price of $175,000.00.

This Motion seeks an order authorizing a 50% reduction of the Asset Purchase Price to $87,500.00 for good cause for the following reasons:

1.   Shortly after the hearing on the Sale Motion, the Buyer discovered an alleged data breach by Creditors Specialty Northwest, Inc., an Oregon corporation ("Creditors Northwest"), which the Buyer has maintained greatly reduced the value of the purchased Property;

---

[1] The Property includes all of the Estate's rights, title and interests in the tangible and intangible personal property of the Debtor including, but not limited to all equipment, goods, the business name, inventory, supplies, customer lists, collection files, judgments and accounts receivable of the Debtor.

1889079

2. The principals of Creditors Northwest are former employees of the Debtor and are relatives of Charles Stanley, the principal of the Debtor, and

3. After the Trustee's thorough investigation and due diligence into the alleged data breach, it was discovered that at least one former client of the Debtor is now a client of Creditors Northwest, and according to Buyer's own due diligence, the staff at Creditors Northwest may have potentially misdirected Debtor clients, Debtor payments, and otherwise impaired the goodwill of the Property;

4. The Buyer notified the Trustee that if the Asset Purchase Price for the Property is not reduced by 50%, it will seek to unwind the previously approved sale, in which case the Trustee would only be permitted to retain the Buyer's deposit of $20,000.00 as liquidated damages under the terms of the Agreement ("Deposit");

5. Due to the gross mismanagement of the Debtor described herein and in the previous Sale Motion, the Property is not of the kind, particularly with the added passage of time, that can be readily marketed by the Trustee for sale to other potential buyers; and

6. In the Trustee's business judgment, based on the specific circumstances of this case, the 50% reduced Asset Purchase Price for the Property is fair and reasonable and still provides maximum benefit to the Estate.

By this Motion, the Trustee specifically seeks an order pursuant to §105(a) that:

(1) authorizes a fifty percent (50%) reduction of the Asset Purchase Price of the Property from $175,000.00 to $87,500.00 to the Buyer on the same terms and conditions as set forth in the Sale Motion and the approved Agreement under § 363(b);

(2) determines that good cause exists for the reduction of the Asset Purchase Price, that the reduction of the Asset Purchase Price is a result of good faith negotiations between the Trustee and the Buyer and is an arms-length transaction, without collusion;

(3) determines that the reduced Asset Purchase Price of $87,500 is fair and reasonable, provides maximum benefit to the Estate and is in the Estate's best interest; and

///

///

2

1889079

(4)     confirms that, with the exception of a reduction of the Asset Purchase Price, the parties are bound by all other findings, conclusions, reasons stated in and referred to in the Sale Order, as well as all other decrees and provisions of the Sale Order.

The Motion is based on the attached Memorandum of Points and Authorities, the Declarations of Rosendo Gonzalez and David Seror appended hereto, all papers and records in the bankruptcy case, all matters of which this Court may take judicial notice, and such further evidence and argument that may be presented to the Court in connection with this matter.

## II.     BACKGROUND

### A.     Relevant Facts Prior to the Sale Motion

On August 11, 2016, the Debtor commenced this bankruptcy case by the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor purported to operate as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

On October 7, 2016, the Court entered an order converting the bankruptcy case to one under Chapter 7 of the Bankruptcy Code, having heard the concerns of the Office of the United States Trustee and various creditors that the Debtor had engaged in both pre- and post-petition wrongdoing, including but not limited to, taking collection actions without proper authority from the client and improperly commingling client funds with funds of the Debtor or other entities.

Charles Stanley ("Stanley") is the principal and sole shareholder of the Debtor and Creditors Specialty Service of Nevada, Inc. ("CSS Nevada").  Stanley testified under oath on multiple occasions that, prepetition, he caused a transfer of the Debtor's business to CSS Nevada.  In reliance on these admissions (among other evidence), on January 17, 2017, Trustee commenced an adversary proceeding against the Debtor, CSS Nevada, and Stanley, seeking a myriad of relief against the Defendants, including avoidance and recovery of fraudulent transfers, substantive consolidation, and damages for conversion and related claims. *Gonzalez v. Creditors Specialty Service of Nevada, Inc., et al.*, Adv. No. 2:17-ap-01015-BB ("Adversary Proceeding").  On January 26, 2017, the Court entered its *Stipulated Order Appointing Responsible Officer in Lieu of Relief Requested in Trustee's Motion for Appointment of Receiver* ("Preliminary Injunction") [Adversary Docket ("Adv. Dkt.") 24, filed under seal].  Pursuant to that Order, Theodore Lanes was appointed Chief Responsible Officer

3

1889079

("CRO") for CSS Nevada. The Court issued a preliminary injunction against all Defendants and the CRO took control of the business. That Adversary Proceeding is still pending and a continued pretrial conference is scheduled for February 13, 2018 at 2:00 p.m.

As set forth in the previously filed Declaration of David Seror appended to the Sale Motion, counsel for the Trustee marketed the assets after the appointment of the CRO and during the month of February, 2017. Trustee's counsel contacted various principals of collection companies as well as general counsel for the California Association of Collectors. Given the prior mismanagement of the Debtor, the Trustee received mostly negative feedback regarding the value of the Debtor's business assets. However, Buyer came forward with an offer, believing that its posture as an existing and successful collection agency would enable it to use its experience and expertise to incorporate the acquired sale assets into its existing business. Buyer's offer was the only offer the Trustee received for the purchase of Debtor's business assets, and the Trustee submitted that, under the circumstances, the sale proposed in the previous Sale Motion provided the best possible return to creditors and this Estate. In light of the data breach, Buyer raised concerns as to the integrity of Debtor's business assets, especially its proprietary customer list.[2] *See* previously filed Declarations of David Seror and Rosendo Gonzalez appended to the Sale Motion [Dkt. 100].

On March 10, 2017, the Trustee filed the Sale Motion and specifically requested that the Sale Order approving the Agreement provide that the Property being sold was the exclusive property of the Debtor and that by and through the Sale, Buyer acquired the exclusive right to use, access, and/or dispose of the Property. The hearing on the Sale Motion was held on March 22, 2017. The Court approved the Sale Motion at the hearing. Just three days after the hearing on the Sale Motion approving the sale of the Property to the Buyer, the Buyer's principal, Clint Sallee, notified Trustee's counsel that he had discovered a potential further data breach, this time by Creditors Northwest, an entity that had been recently formed by Jennifer Breding and Tracy Breding, long-term former

---

[2] For the month of January, 2017 alone, the CRO discovered that, based on payments received during the month, the Debtor was out of trust by at least $95,678. For the month of December, 2016, the Debtor was out of trust in the amount of approximately $91,815. For November, 2016, the Debtor was out of trust in the amount of approximately $123,108. Thus in the 90-day period prior to the CRO's appointment, the business was approximately $400,000 out of trust. The CRO believed that Stanley had operated the business out of trust for many years, at least since 2011. *Id.* See previously filed Decl. of CRO. [Adv. Dkt. 35]

employees of Debtor and are relatives of Charles Stanley. As Trustee's counsel and the Buyer's principal met to discuss and evaluate the initial details concerning the alleged data breach, the Court entered the previously lodged Sale Order approving the Sale Motion on March 31, 2017, which, among other things, approves the proposed sale with the original purchase price of $175,000.00. [Dkt.130]

### B. **Factual Events Following the Hearing on the Sale Motion and Entry of the Sale Order**

Notwithstanding the entry of the Sale Order approving the Buyer's purchase of the Property for the Asset Purchase Price, the Buyer requested that the Trustee continue to conduct an investigation into the potential data breach by Creditors Northwest, which the Buyer believed to be of a serious nature and one that caused a "significant" loss in value of the Property the Buyer had purchased. Buyer's principal notified Trustee's counsel that the value of the Property had been diminished as a direct result of a compromise of the database, a potential redirecting of Debtor payments and the Buyer's reduced ability to enforce judgment. Based on Buyer's serious concerns, including Mr. Sallee's intent to unwind the entire sale transaction, the Trustee, through his counsel, commenced an investigation into the alleged data breach. As part of the Trustee's investigative efforts, Trustee's counsel served subpoenas on Comtronic Systems, LLC—the company that created and maintains Debtmaster ("Debtmaster")—as well as on Creditors Northwest. Trustee's counsel disclosed the potential data breach to the bankruptcy court at a hearing on a different item on April 11, 2017, as well as other pleadings filed with the Court.

Trustee's counsel served a subpoena on Comtronic Systems, LLC on April 17, 2017. Among other things, the subpoena requested all collection activity records maintained by Debtmaster regarding Creditors Northwest, Charles Stanley, and ARC Services, Inc., a California corporation. Thereafter, or around April 21, 2017, Trustee's counsel spoke with Haley Kauzlarich at Debtmaster who explained that Debtmaster had a record of Creditors Northwest as a customer, but it did not have a record of Charles Stanley personally or "ARC Services" as an existing customer. Charles Stanley's only relationship with Debtmaster appeared to exist through the Debtor's account. Debtmaster represented that it did not maintain databases of account history for particular customers

Case 2:16-bk-20721-BB    Doc 148    Filed 12/20/17    Entered 12/20/17 15:35:37    Desc
Main Document    Page 7 of 18

(thus they did not produce any account histories) and that customer records were not archived on the Debtmaster servers, but instead customers hosted product rent servers and hard drive space from Microsoft directly. Based on the response, the Trustee did not believe that Debtmaster had any records to help determine whether Creditors Northwest breached any of the Debtor's data when it was formed. Debtmaster was not pursued any further.

On May 8, 2017, Trustee's counsel served a subpoena on the custodian of records for Creditors Northwest requesting the following: a complete customer list for Creditors Northwest, bank account statements, correspondence between Tracy or Jennifer Breding and Charles Stanley, and account history for all customers. Creditors Northwest timely produced voluminous responsive documents. The documents produced showed that as of May, 2017, Creditors Northwest had 25 customers. The only cross-over customer located was Ray's Towing, Inc. It appeared from the documents that Ray's Towing was previously a customer of the Debtor, but that Ray's Towing ended its relationship with the Debtor in approximately November, 2016. Ray's Towing signed a contract with Creditors Northwest on December 16, 2016, a copy of the contract was also produced. From the payment history reports produced, it appeared that Creditors Northwest had collected a total of $3,305.02 on the account since February 11, 2017. From the documents that were produced and reviewed, no other customers appeared to have been taken from the Debtor.

On or about June 30, 2017, Trustee's counsel communicated the results of the above investigation with the Buyer. Ultimately, the Trustee's investigation confirmed that at least one client of Creditors Northwest was duplicative of a former client of the Debtor. Buyer however was not satisfactorily convinced that a more extensive breach had not occurred and believed that the purchased assets were irreparably compromised. The Buyer again told the Trustee that it would seek to unwind the entire sale if the Asset Purchase Price was not reduced by 50%. In other words, the Trustee was faced with a situation where he could keep the Deposit of $20,000 as liquidated damages, or seek Court approval to reduce the Purchase Price to $87,500. In his business judgment, the Trustee believes that the reduction of the Purchase Price is in the best interests of this Estate under the circumstances.

///

6
1889079

While the Trustee's investigation may not have resulted in discovering concrete evidence that the Creditors Northwest office staff actively misdirected former clients of the Debtor, Buyer maintained that through its own due diligence, other breaches occurred including Creditor Northwest's receipt of Debtor payments and the loss of other goodwill for which the Buyer paid. Specifically, Buyer pointed to the almost identical name of the new company, Creditors Specialty Northwest, Inc. compared to the Debtor's name, Creditors Specialty Service, Inc. This, among other things, was evidence that Creditors Northwest at least was attempting to confuse clients of the Debtor, some of whom were located in Oregon.

The Buyer also represented to Trustee's counsel that it spent thousands of dollars migrating the Debtor's data, contacting Debtor's clients, fulfilling countless administrative requests from legacy Debtor's clients and debtors, and supporting the FBI's investigation. Again, Buyer insisted that Debtor-related entities continued to solicit legacy Debtor clients. *See* attached Declarations of Rosendo Gonzalez and David Seror.

### III. PURSUANT TO ITS EQUITABLE POWERS UNDER SECTION 105(a) AND UNDER SECTION 363(b), THE COURT MAY ISSUE AN ORDER REDUCING THE PREVIOUSLY APPROVED ASSET PURCHASE PRICE

Section 105(a) of the Bankruptcy Code empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As a general rule, however, the bankruptcy court may not use its section 105(a) powers to authorize an action that would be inconsistent with or prohibited by another provision of the Bankruptcy Code. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). In other words, §105(a) must be used in combination with another provision of the Bankruptcy Code.

Section 105(a) in combination with §363(b) permits the Court to issue an order that is "necessary and appropriate" to carry out the provisions of the Code. Here, §105(a) allows the Court to enter an order reducing the previously approved Asset Purchase Price by 50% under these specific set of circumstances, which reduction is fair and reasonable and still in the best interest of the Estate.

///

///

7

Where business exigencies such as the case here require, the Court may use its equitable powers under § 105(a) to authorize the reduction of a purchase price which will provide benefit to the Estate particularly when the alternative result would be for the Estate to receive nothing.

The relief requested herein is also appropriate under §363(b), the original authority for the Trustee's Sale Motion. [Dkt. 100]. Since the entry of the Sale Order and under the circumstances, including the actual and perceived data breach by Creditors Northwest, the Buyer's resulting belief that the value of the Property has significantly decreased, and the general unmarketability of the asset, the Trustee submits in his business judgment, that the reduced Asset Purchase Price for the Property is fair and reasonable under the circumstances and is still the best possible return to the creditors of the Estate and should therefore be approved.

Under Section 363(b), in determining whether the sale of assets outside of the ordinary course of business should be approved, bankruptcy courts usually consider several factors, including: (1) whether a sufficient business reason exists for the sale; and (2) whether the proposed sale is in the best interest of the estate, which in turn consists of the following factors: (a) that terms of the sale are fair and reasonable; (b) that the proposed sale has been adequately marketed; (c) that the proposed sale terms have been properly negotiated and proposed in good faith; and (d) that the purchaser is involved in an arms-length transaction with the seller. *See In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ("In approving any sale outside the ordinary course of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, *i.e.*, it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, and that it is an 'arms-length' transaction.").

The Trustee previously satisfied all of the applicable elements discussed above concerning the proposed sale of the Property, and the Trustee had sound reasons for the sale, specifically, to maximize return to the Estate by liquidation of the Property. The Trustee submits that the reduced Asset Purchase Price for the Property offered by Buyer is fair and reasonable and that the sale of the Property at the reduced Asset Purchase Price is still in the best interest of the Estate.

///

As was previously detailed in the Sale Motion, due to gross mismanagement, both pre- and post-petition, the assets of the Debtor were difficult to value and market. Specifically, through the exhaustive investigation work of CRO into the Debtor's QuickBooks files and records, as well as the Debtmaster system, it was discovered that Stanley had mismanaged the business in a number of ways. *See* previously filed Declaration of Lanes, appended to the Sale Motion, among other things. Stanley's behavior continued post-petition, and Stanley even interfered with the CRO's operation of the business by attempting to divert funds for payment of his personal expenses. Notwithstanding Stanley's gross mismanagement and the significant issue of having negative balances in the Debtor's trust account, the Debtor's personal property business assets still had some value when the Trustee sought to sell same to Buyer. Now, with the most recent allegations of a data breach by Creditors Northwest, discovered by the Buyer just prior to the entry of the Sale Order, and the Trustee's and Buyer's resulting independent investigations into the alleged breach, the Debtor's assets have become less valuable and almost entirely unmarketable to another buyer. While the previous Sale Motion was not subject to overbid, the Trustee has not at any time been contacted by any potential overbidder or other potential purchaser of the assets. Under the circumstances, the proposed reduced Asset Purchase Price is both fair and reasonable, and the factors under Section 363(b) remain satisfied.

Further, the proposed reduction of the Asset Purchase Price was a result of good faith negotiations between the Trustee and the Buyer and as a result of a thorough and good faith investigations into the alleged data breach. The reduced Asset Purchase Price is still greater than the undisputed liens secured by the Property. *See* Sale Motion, pp. 11-12 (discussion regarding sale of assets free and clear of all liens).

The Trustee has carefully considered the likely costs to the Estate that would accompany the litigation that would ensue if the Buyer sought to unwind the approved Sale, including the likely unrecoverable loss to the Estate of the reduced Asset Purchase Price of $87,500.00. The Trustee has also carefully considered the passage of time since the entry of the Sale Order as well as the special nature of the Debtor's asset which make it such that the Property is essentially unmarketable to another buyer. Declaration of Rosendo Gonzalez.

9

1889079

Accordingly, the Trustee has determined in his business judgment that the reduced Asset Purchase Price for the Property is fair and reasonable and is still in the best interest of the Estate. Decl. The Buyer has already tendered to the Trustee the total reduced Asset Purchase Price of $87,500.00, which is held by the Trustee for the benefit of the Estate.

## IV.    CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Court enter an order pursuant to §105(a) and §363(b) granting this Motion and:

1.    Authorizing a fifty percent (50%) reduction of the Asset Purchase Price of the Property from $175,000.00 to $87,500.00 to the Buyer on the same terms and conditions as set forth in the Sale Motion and the approved Agreement;

2.    Determining that good cause exists for the reduction of the Asset Purchase Price, that the reduction of the Asset Purchase Price is a result of good faith negotiations between the Trustee and the Buyer and is an arms-length transaction, without collusion;

3.    Determining that the reduced Asset Purchase Price of $87,500 is fair and reasonable, provides maximum benefit to the Estate and is in the Estate's best interest;

4.    Confirming that, with the exception of a reduction of the Asset Purchase Price, the parties are bound by all other finding, conclusion, reasons stated in and referred to in the Sale Order as well as all other decrees and provisions of the Sale Order;. and

5.    Granting such other and further relief as the Court deems just and proper under the circumstances.

DATED:  December 20, 2017            BRUTZKUS GUBNER

                                     By: /s/ Talin Keshishian
                                         Talin Keshishian
                                     Attorneys for Chapter 7 Trustee, Rosendo Gonzalez,
                                     Chapter 7 Trustee

10

1889079

### DECLARATION OF ROSENDO GONZALEZ

I, Rosendo Gonzalez, declare:

1.  I am the duly appointed and acting Chapter 7 Trustee for the bankruptcy estate of Creditors Specialty Service, Inc. I have personal knowledge of the facts contained herein, or have gained such knowledge from my review of records I normally maintain as Trustee, and if called as a witness, I could and would competently testify to these facts under oath.

2.  I make this declaration in support of the Motion to which it is appended. All initial capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Motion.

3.  Immediately after the hearing the Sale Motion and based on the information my counsel received from the Buyer regarding a potential data breach by Creditors Northwest, I instructed my counsel to conduct a thorough investigation into the alleged data breach.

4.  After the investigation, and having relayed the results of the investigation to the Buyer as well as to me, my counsel advised me that the Buyer still believed the value of the Property was reduced as a result of the data breach, in part based on Buyer's own due diligence. Based upon the results of the investigation as well as my counsel's multiple discussions with the Buyer, I authorized the reduction of the Asset Purchase Price by 50%, so that the Estate would retain $87,500.00 instead of the Buyer's deposit of $20,000.00.

5.  I have received from the Buyer in good funds the total reduced Asset Purchase Price of $87,500.00 and hold them for the benefit of the Estate.

6.  Due to the gross mismanagement of the Debtor described in this Motion and in the previous Sale Motion, the Property is not of the kind, particularly with the added passage of time, that I can readily market for sale to other potential buyers.

7.  In my business judgment, based on the specific circumstances of this case, including the lack of any other viable buyers for this particular asset of the Debtor, that the 50% reduced Asset Purchase Price for the Property is fair and reasonable and still provides maximum benefit to the Estate.

11

1889079

8. I have not been contacted by any potential overbidder and, in my business judgment and in light of the special circumstances regarding this Sale, there are no viable alternative purchasers of the Sale Assets.

9. I have no relation to the Buyer and I did not know the Buyer prior to its involvement in this bankruptcy case. The Sale terms set forth in the Agreement were negotiated at arms-length, as were all the negotiations relating to the proposed reduced Purchase Price, which I believe is a fair consideration for the Property.

10. Based thereon, I request that the Motion be approved as in the best interests of the Estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of December, 2017, at Los Angeles, California.

_____
Rosendo Gonzalez

1889079

# DECLARATION OF DAVID SEROR

I, David Seror, declare:

1.     I am an attorney, duly licensed to practice law before all courts of the State of California and this Court. I am a partner in the law firm of Brutzkus Gubner, general counsel to Rosendo Gonzalez, Chapter 7 Trustee. I have personal knowledge of the facts contained herein, and if called as a witness, I could and would competently testify to these facts under oath.

2.     I make this declaration in support of the Motion to which it is appended. All initial capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Motion.

3.     Shortly after the hearing on the Sale Motion, the Buyer contacted me directly concerning the discovery of an alleged data breach by Creditors Specialty Northwest, Inc., an Oregon corporation ("Creditors Northwest"), which the Buyer maintained greatly reduced the value of the purchased Property. I have previously disclosed the potential data breach to the bankruptcy court at a hearing on a different item on April 11, 2017 during our ongoing investigation, as well as in other pleadings filed with the Court.

4.     Based on these disclosures, the Trustee instructed me to conduct an investigation into the alleged data breach by Creditors Northwest.

5.     On or about April 17, 2017, my office served a subpoena on Comtronic Systems, LLC the company that created and maintains Debtmaster.

6.     Among other things, the subpoena to Comtronic Systems requested all collection activity records maintained by Debtmaster regarding Creditors Northwest, Charles Stanley, and ARC Services, Inc., a California corporation. On or around April 21, 2017, my office spoke with Haley Kauzlarich at Debtmaster, who explained that Debtmaster had a record of Creditors Northwest as a customer, but it did not have a record of Charles Stanley personally or "ARC Services" as an existing customer. Charles Stanley's only relationship with Debtmaster appeared to exist through the Debtor's account. Debtmaster further represented that it did not maintain databases of account history for particular customers (thus they did not produce any account histories) and that customer records were not archived on the Debtmaster servers, but instead customers hosted product rent

servers and hard drive space from Microsoft directly. Based on the response, I did not believe that Debtmaster had any records to help determine whether Creditors Northwest breached any of the Debtor's data when it was formed, and thus the Trustee instructed not to pursue Debtmaster any further.

7. On or about May 8, 2017, my office also served a subpoena on Creditors Northwest itself. The subpoena served upon on the custodian of records for Creditors Northwest requested the following: a complete customer list for Creditors Northwest, bank account statements, correspondence between Tracy or Jennifer Breding and Charles Stanley, and account history for all customers. The documents produced showed that as of May, 2017, Creditors Northwest had 25 customers and that the only cross-over customer located was Ray's Towing, Inc. From the documents produced and with the assistance of the CRO, it appeared that Ray's Towing was previously a customer of the Debtor, but that Ray's Towing ended its relationship with the Debtor in approximately November, 2016. Ray's Towing signed a contract with Creditors Northwest on or about December 16, 2016, a copy of the contract was also produced. From the payment history reports produced, it appeared that Creditors Northwest had collected a total of $3,305.02 on the account since February 11, 2017. From the documents that were produced, no other customers appeared to have been taken from the Debtor.

8. After the investigation, on or about June 30, 2017, I communicated the results of the above investigation to the Buyer and that the investigation confirmed that at least one client of Creditors Northwest was duplicative of a former client of the Debtor. Buyer however was not convinced that a more extensive breach had not occurred and believed that the purchased assets were irreparably compromised. The Buyer communicated to me that it would seek to unwind the entire sale if the Asset Purchase Price was not reduced by 50%. In other words, the Trustee was faced with a situation where the Estate could keep the Deposit of $20,000 as liquidated damages, or seek Court approval to reduce the Purchase Price to $87,500.

9. While the Trustee's investigation may not have resulted in discovering concrete evidence that the Creditors Northwest office staff actively misdirected former clients of the Debtor, Buyer maintained that through its own due diligence, other breaches occurred, including Creditor

14

Northwest's receipt of Debtor payments and the loss of other goodwill for which the Buyer paid. Specifically, Buyer pointed to the almost identical name of the new company, Creditors Specialty Northwest, Inc. compared to the Debtor's name, Creditors Specialty Service, Inc. This, among other things, was presented to me as evidence that Creditors Northwest *at least* was attempting to confuse clients of the Debtor, some of whom were located in Oregon. The Buyer also stated that it spent thousands of dollars migrating the Debtor's data, contacting Debtor's clients, fulfilling countless administrative requests from legacy Debtor's clients and debtors, and supporting the FBI's investigation. Again, Buyer insisted that Debtor-related entities continued to solicit legacy Debtor clients. I also understand that the Buyer, based on its own due diligence, claims that staff at Creditors Northwest may have potentially misdirected Debtor clients, Debtor payments, and otherwise impaired the goodwill of the Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of December, 2017, at Los Angeles, California.

_____
David Seror

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, CA 9136**7.

A true and correct copy of the foregoing document entitled: **Motion for Order Authorizing For Good Cause Reduction of Purchase Price of Previously Approved Sale; Memorandum of Points and Authorities and Declarations of Rosendo Gonzalez and David Seror in Support Thereof** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 20, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On **December 20, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Sheri Bluebond  
United States Bankruptcy Court  
Los Angeles Division  
255 East Temple Street, Suite 1534  
Los Angeles, CA  90012  

Buyer  
Fidelity Creditor Service  
Attn: Clint Sallee  
441 N. Varney Street, 2nd Floor  
Burbank, CA 91502

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 20, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 20, 2017 | Jennifer Warner | /s/ Jennifer Warner |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:

- Jessica L Bagdanov    jbagdanov@brutzkusgubner.com, ecf@brutzkusgubner.com
- Michael F Chekian    mike@cheklaw.com, msalanick@cheklaw.com
- Neil C Evans    evanstnt@aol.com
- Rosendo Gonzalez (TR)    rgonzalez@ecf.epiqsystems.com, itran@gonzalezplc.com,khernandez@gonzalezplc.com,rossgonzalez@gonzalezplc.com
- Haydee Garbero Hooten    hdg@moorebrewer.com, cl@moorebrewer.com;cg@moorebrewer.com
- Bonni S Mantovani    cmartin@pralc.com, bmantovani@pralc.com;ecfcca@ecf.courtdrive.com
- Ron Maroko    ron.maroko@usdoj.gov
- John Mendonza    jm@mendonzalaw.com
- Cassandra J Richey    cmartin@pralc.com, ecfcca@ecf.courtdrive.com
- Mark P Romano    mromano@rslemonlaw.com, avalitskaya@rslemonlaw.com
- Spencer P Scheer    sscheer@scheerlawgroup.com
- Fred W Schwinn    fred.schwinn@sjconsumerlaw.com, fschwinn@gmail.com
- Melanie Scott    melanie.scott@usdoj.gov
- David Seror    dseror@brutzkusgubner.com, ecf@brutzkusgubner.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Bethany Wojtanowicz    bethanyw@w-legal.com, BNC@w-legal.com
- Robert J Wood    rjwood@boutinjones.com, skelley@boutinjones.com
- Hatty K Yip    hatty.yip@usdoj.gov, dare.law@usdoj.gov

17

1889079